The Honorable Lieutenant of the United States Court of Appeals for the Fourth Circuit, Oye Oye Oye, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to this special session of the U.S. Court of Appeals for the Fourth Circuit. Here in Spartanburg, South Carolina, I want to thank Judge Floyd for the kind invitation to sit this morning. We have but one case on the calendar today, 22-4014, United States of America v. King, and Ms. Leiston, whenever you're ready. Judge Diaz and may it please the Court, Jenny Leiston for Mr. King. Your Honor, it is undisputed in this case that the district court at Mr. King's resentencing, which was a full resentencing, said not one word about Mr. King's renewed objections to the guideline range. It did not say it was adopting the PSR. It did not say that it was incorporating its previous findings from the first sentencing. It did not say what the guideline range was. It did not say anything about why Mr. King's sentence was appropriate in light of the 3553A factors. And it never entered an amended statement of reasons. Now, Your Honors, this Court has made clear that when it comes to reviewing sentences, guesswork is simply not good enough. Were you the trial counsel? No, Your Honor. Well, I wish you were. What infuriates me about these cases, both the government and the defense, why don't you help the judge out when he screws up? This is a simple case. The government has said, you know, Judge Boyle, you need to put this on the record. You need to put this on the record. The defense counsel needs to do the same thing. Why don't you all do that? As to the Court's failure to make appropriate findings of fact, Your Honor. Your Honor, so when a party makes objections, right, the district court, and these were filed objections on the record. We filed extensive, detailed objections. The Court has an obligation to resolve those obligations. Even if we say nothing at the sentencing hearing, I'm unaware of any authority that says that the party, once it has objected, is required to then further object to the Court's failure to make findings. If it's a civil case and you have a motion in limine, and you file that ahead of time, and the Court, for whatever reason, doesn't rule on it, and a witness gets up and gets to talk about the stuff that is the subject of the motion in limine, the motion in limine doesn't preserve your objection. You have to object again. There's lots of things in the law where there is an obligation to make your objection. And if you've got a ruling and you've objected, if you object and get a ruling, you're good there. But the challenge here is, I mean, you look at your first two issues on appeal, and you say whether the Court erred by increasing the offense levels. Well, did it? Oh, I agree that this record is as clear as mud. So I agree that it is actually unclear whether or not the district court actually ruled on those objections. But I would judge Floyd and Judge Quattlebaum to address this. Again, I think a trial situation is a little bit different from a sentencing situation. I would direct this Court to the decision in United States v. Boyd. I think this may be the one decision that I did not cite in my brief, and so I apologize for that, and I would be happy to file a 28-J letter if this Court would like. The citation to this is F-5, F-4, 550. That's a 2021 decision from this Court. And this decision stands for the proposition that when the party files objections on the record, the district court is responsible, has an independent obligation to rule on those objections, even if the party at the sentencing does not say a single word about those objections. Can I go back to Judge Floyd's sort of exasperation with this case? And you're right, although one of the issues that we asked that the parties brief as part of the supplemental briefing was whether or not the failure by the defense counsel to then get up after the district judge didn't rule on the objections somehow alters the standard of review from clear error to plain error. And of course, I'm not sure that we get there if the district court judge failed to resolve the procedural issues in the first instance, but Judge Floyd's point is that here we are, and it may be that this case is going back down to the district court for round three because of what happened here. And I guess what he's saying is, why doesn't somebody speak up? The trial defense lawyer, the assistant U.S. attorney, and tell the district court, hey, you didn't dot the I's, you didn't cross the T's here. And irrespective of whether or not there's a legal obligation to do that, why isn't there a practical obligation to do that? So I think if there would be any obligation on either side, and again, I am unaware of any authority that says that either side has an obligation to remind the court of its basic duty to explain its rulings, but if there were an obligation, Your Honor, I would submit that it would be on the part of the party who benefited by the ruling. I mean, the government here got a huge sentence, and again, this is coming back after an appeal in which Mr. King has laid bare all of his arguments. So the government is walking into this sentencing knowing that we're objecting to this, we're objecting to that. I think if the court fails to say a single word about why the sentence is appropriate or doesn't address the objections, I think the government, and I have seen them do this often in Judge Boyle's court, to say, Your Honor, you know, you didn't really explain that sentence very well, or Your Honor, could you just provide a little clarity on these rulings? So if here, because the written objections, there's a bunch of them, right? And the 2021 sentencing, defense counsel raises two. And hypothetically, if those two are explained, resolved, and sentenced in a way that is sufficiently explained, is it your position that the district court has erred because it didn't go through every written objection when counsel only raises two of those at the sentencing? So I think by virtue of the fact that we did not raise those arguments on appeal, we did not preserve those objections on appeal, I think when it comes back, I'm not sure. I think maybe law of the case would say that you can't read . . . This is the first time. This is the first hearing. I just want to see where you're going with it. Because imagine we're back in 2019. There you raised three. Not all of them, but three. And let's assume we think those were sufficiently explained. Is it your position that the district court erred because it didn't go back through the 20 or so others that were in the written objections? And only addressed the ones that you brought up at the hearing? Absolutely, Your Honor. And United States v. Boyd stands for that exact proposition, Your Honor, where the parties in Boyd, the defendant, raised quite a few objections on appeal, but didn't say a word about the objections at the sentencing. But then on appeal, the government said, oh, well, the defendant is on plain error review because he didn't raise any of these objections. Or he didn't say anything orally about these objections at sentencing. Let me lead you to another issue that could come up in this case. The Sixth Circuit has kind of put a stop to this, but suppose this case goes back. Does the government get a second bite at adding additional evidence at sentencing? Absolutely not, Your Honor. On what authority in this circuit? On what authority? In this circuit. Because I'm a proponent of the Sixth Circuit rule. You don't get a second bite. But that's the part that we have here. This court said that in Pettis. This court said that in maybe Burnley. I will double check on when I sit down, Judge Floyd, but I know that we said it in Pettis and perhaps Evans. But this court has made clear in published opinions that the government does not get a second bite at the apple, Your Honor. A second bite at the evidence? At the evidence, yes. Well, let me ask you about the evidence because that's the other strange thing about this case is that your colleague down below essentially made what was a proffer, right? Because they didn't present any evidence. They said we've talked to these witnesses. An investigator has spoken to the witnesses. And here's a summary of what they would say. In some instances, they knew nothing about the quantities being alleged by the government. Is that enough? So, Chief Judge, I would push back on saying that was the only evidence. In our objections, we disputed the quantities, the people, the timeline. And we provided our own competing estimates. That was coming directly from our client. That is our evidence in the record. And I agree that the little information, the proffer, wasn't particularly persuasive to me. But it is exactly the same type of evidence that the government has presented here. I mean, they just put an agent on the stand who's relaying second- and third-hand information, some of it from Jaquarius. I mean, it's just coming from him. Our information was coming from our client. And, again, we presented very detailed objections and said, no, I never dealt with that person. I did deal with this person. Here's how much I dealt with that person. Here's the timeline in which I dealt with that person. So that was all in the record, Your Honor. When Judge Boyle had this case the first time, he said that he thought that the testimony of the agent was persuasive with respect to drug quantity, I guess, and supervision, or maybe supervision primarily. And then he said, I think he said, that he was going to rely on the PSR. And that was his analysis. Do you think that was enough the first time around? No, I don't, Your Honor. I do not. I think, particularly given our extensive objections, the court needed to come up and show its work a little bit more and show us why the quantities that it's saying are reliable are reliable. Because, again, when you look at this evidence, Your Honor, they put one witness on the stand, and that agent's testimony did not support the quantities alleged in the PSR's drug chart, right? The detective testified to different people. I don't think he presented really much evidence on the timeline at all at different quantities. And this was information that was supposedly coming from Jaquarius. So you have information in the PSR from Jaquarius, and then you have the only evidence in the case, which is from Detective Thomas, and he's saying something very different. So what is the reliable evidence? I think the court needs to at least explain why base offense level of 32 is appropriate in this case. Counsel, is your motion for a downward variance, was that pending and at issue in 2021? Absolutely, Your Honor. It was still on the record. There was nothing about this court vacating the judgment that somehow nullified or got rid of that motion for a downward variance or a sentencing memo. It's still on the record. And this was sent back for a full resentencing. So I don't think we need to refile a redundant filing. I mean, again, you don't need to even remind the court at some point that we have a pending motion? Again, I think the court is responsible for knowing what's on its docket. And obviously, that would be best practice. Do I wish my trial counsel had made a more fulsome argument and pointed all these things out? Absolutely. But were they required to? Were they obligated to? No, Your Honor. That's fair. I appreciate your point there. I'm trying to think back as to kind of how we got here. I'm wondering, you know, we've had a lot of these Roger Singletary cases over the last few years. But this was relatively early in that process. And you've described the law as it is, as a full resentencing. And this doesn't really have anything to do with probably the analysis of the legal issues. But being kind of early with that jurisprudence out there, which we've now confirmed we're like the only circuit that does what we do on that issue. I just wonder if everyone really grasped what was going on there, what the obligations were. It seems like, quite frankly, Mr. King's counsel didn't treat it like a full resentencing. You might debate that. But I mean, I would just suggest that's a fair reading or at least a debatable reading. And no one really did. Well, it's interesting. I have handled quite a few Roger Singletary resentencings, Your Honor. And I will say in the other ones that I have seen in front of other district courts, the judge actually usually comes in and says, OK, we're here. This is a full resentencing. If there was evidence at the previous sentencing, the district court normally says something like, OK, do we want to represent the evidence or is everybody good about we'll just rely on the transcript? And, you know, our counsel will say, you know, there's no need to reinvent the wheel. We're fine with relying on that. I can attest that other district courts have handled these and certainly treated the Roger Singletary appeals resentencings as full resentencing. What do you make of the fact that Judge Boyle's emphasis, to the extent there was any emphasis in sentencing, was on your client and asking him direct questions about how he was doing in prison and the circumstances that led to his offense. And then right after that, you know, gave him a substantial reduction from the original sentence. Can we imply from that that, you know, he had taken everything into account and this is where he landed? I mean, I'm trying to be generous to Judge Boyle. You're shaking your head already. So, again, I have seen quite a few Roger Singletary resentencings and I have seen the courts shave off maybe six months for good conduct in BOP. This is over six years. So are we really sure that that is the only thing? You're unhappy about that? Be careful. Are we sure that that is the only thing going on? The only times I've seen reductions of that size have been when the guideline calculations have changed. And so I do think it is very unclear here precisely what Judge Boyle was doing with this sentence. Is there a chance that, you know, Mr. King and his counsel thought, oh my gosh, this is great, we're not going to say anything? Your Honors, I don't... I don't mean that in a bad way, but it kind of goes back to Judge Floyd's initial question. If your concern is really to make sure all these objections are ruled on, you know, I got your point that the court should do it. But when you've gotten a result, say it's not this case, and you're like, I like this result, and then you, so I'm not going to say anything, and then later on it feels like I might do better, that's the, then we've got to kind of go back and try to deal with all this. Anyway, that's the part that is, you know, I wonder whether there's not some obligation to raise the fact that not all these issues have been clarified. Our consistent position has always been, we were requesting incentives between, you know, in the guideline range that we thought was appropriate. So is my client happy about a 160-month sentence over 13 years of his life when he has no idea why he got that sentence? No, he's not satisfied, he's not happy with that sentence, Your Honor. I see that my time is up. I will save the remainder for rebuttal. Thank you, Your Honor. Thank you. Good morning. May it please the Court, Christine Fritz on behalf of the United States. I'm asking you to affirm the judgment of the District Court today. We agree that in 2021, the District Court erred by not ruling on the renewed objections. It should have clearly stated on the record that it was, what its ruling was. But procedural errors like this can be reviewed for harmlessness, and our position is that the error is harmless because the same objections were presented in 2019, and the Court did make rulings then. And then the question at that point becomes whether those rulings were adequate. But the simple act of not, again, stating . . . But doesn't your, that position, counsel, that suggests the District Court accepted the guidelines range from the PSR and downward buried by as much as it did? That it accepted the guidelines and it downwardly buried 50 months. Yes, that is our position. You're asking us to say it's harmless when your position implies that there was a downward variance and there was no discussion of why there was a downward variance? I'd like to separate the guidelines determination issues from the explanation of the sentence because I do think they're discrete inquiries. Our position is that the Court, at the start of the resentencing hearing, well, first of all, there was a probation officer's letter that specified at the previous hearing the Court calculated the advisory guideline range to be 210 to 262 months. At the start of the second hearing, the Court referred back to that guidelines range calculation. We acknowledge that there was a renewal of the objection, but as I've often seen in these singletary cases, these objections are renewed for preservation purposes. And I think that the conduct of the parties in this case kind of shows that that was what the understanding was here. That this was, we were preserving these objections for purposes of the subsequent appeal and the parties moved forward. I think that the understanding was that the Court hadn't revisited its guidelines calculation because, quite frankly, there had been no information presented to warrant the Court revisiting its previous determination. What about the defense investigation of the three witnesses? That wasn't before the district court the first time around. The proffer that was given at the second hearing where they alleged that they sent an investigator out and talked to these witnesses and they contradicted themselves or said that they had, in some instances, said they didn't even know who the defendant was and said they had nothing to do with the quantities that they were alleged to have been attributed to them. Why isn't that evidence sufficient to alert the district court that it needs to revisit that issue? That proffer was not sufficiently specific to give a concrete fact-based issue for the Court to determine. Did the government object to that proffer? The government did not object to the proffer. The government suggested that it would be appropriate to have those witnesses testify. But, quite frankly, we don't even know who those people are. Isn't it more than the proffer? Didn't Mr. King himself offer some specific reasons why that evidence wasn't credible? He talked about Joshua being in the hospital during that time. He talked about some medical issues with his son. Sure, there was a proffer, but there was also testimony under oath from the defendant. Whether it's compelling or not, I don't know, but that was stuff that was not there in 2019. I don't believe that the defendant was under oath at the sentencing hearing. I do think that that was offered as part of his allocution. I think that the Court understood that in the context of the allocution, that this wasn't a point in time when we were revisiting the guidelines range based on concrete fact-based issues. I don't understand that. I mean, it's a full resentencing. We obviously are, but the defendant is raising the issue. The defendant renewed his objections, yes. But, again, I would point to the information that was provided in the proffer. It was very vague. I think that had that proffer been more detailed, specifically saying, we interviewed this individual. The PSR attributed this amount of drugs to him. Our investigators spoke with him and learned this information. That's something concrete and identifiable for the Court to resolve. But a general statement that we've talked to some people, and they said something different than what was in the PSR, that doesn't give the district judge much to work with. And our point is simply that that wasn't enough for there to be a basis for this Court to think that there wasn't sufficient for the district court to revisit its prior determinations. And everything suggests that the Court understood its previous ruling to be in place, as did the parties. Again, this was early after Singletary. How do we know everybody understood the previous issue? Did Judge Bowles say anything about that? Unfortunately, no. Well, how do we know? I think that the context demonstrates that it was not revisiting its prior determination. But we started out with this process years ago. We need to do it. We ought to do it. And then we finally said we must do it. And then all of a sudden this Court comes back. They didn't do it in this case. So now we've got to redo it. So we keep using the word individualized assessment in a sentencing. This was a full re-sentencing. Where is the individualization in this case? At the time the issue is being considered. I understand this Court's individualized assessment jurisprudence to go towards the explanation and ensuring that the District Court considered the defendant as an individual and tailored a sentence to his personal characteristics and circumstances. And Judge Bowles did that here. On that date and time, did he do it? I do. If you look at the second part of the second sentencing hearing, it was a very judge-driven inquiry. And the Court probed many of the 3553A considerations that it seemed to be most relevant. First and foremost, the defendant had presented information about his rehabilitation while he was in custody. That was one of the first things the Court asked about. I want to know how you're doing in custody. I want to know about your violations, your BOP level classifications, where your placement is. The Court asked him about substance abuse problems. Initially, at the initial sentencing hearing, I believe in the PSR, the defendant denied having a substance abuse problem. But at the resentencing hearing, the Court asked about that, and the defendant said, I do have a substance abuse problem. And what did the Court do in response to that? The Court ordered substance abuse treatment as part of the supervised release and also made substance abuse treatment recommendations. The Court asked about things related to the defendant's violence. There was a pending charge in the PSR about a murder of an individual named Gooch. The Court asked, did you do that? And the defendant responded, no, I didn't do that, and I think that they looked at me because I had the same street name as somebody else. The Court also inquired about whether the defendant had been caught with a firearm. And the information was that the firearm and the ammunition were connected to the son, not the defendant. This is information that the Court elicited. And in the defendant's appellate brief, the things that they point to as being inadequately addressed, they identify what I understand to be four arguments. The rehabilitation, the challenging childhood and lack of role models. I kind of understand those to be similar, the challenging childhood, lack of role models. And then the substance abuse issues. And in the resentencing hearing, the Court was looking at the defendant's personal history section of the PSR and said, you grew up in Detroit. You had a really terrible childhood, didn't you? He explored that. He asked questions about why did you get your son involved in this? There were also things that weren't even really brought up at the sentencing hearing. The Court recalled that at the original sentencing hearing in 2019, the defendant's daughter was attending college at UNC. Two years later, he asked, did she graduate? This was individualized. And after considering the allocution, after considering all of the information that was before the Court, the Court decided to downwardly vary. And quite frankly, the defendant didn't seek clarification for good reason. That was a significant downward variance. And it was based on the arguments and the concerns that were highlighted by the defendant in his... Do we have an authority that you know of that would affirm a variance, upward or downward, without saying you're doing so or giving the reasons? This kind of point you're making, an implied downward variance. Are you aware of any case that we have where we have upheld such an implied variance where the Court has neither said they're varying nor given the reasons for it? I can't think of a case that specifically says that. But I do think that, first of all, the argument that I understood to be raised was that the District Court didn't respond to the non-frivolous arguments. And I think the District Court elicited the non-frivolous arguments and responded to them. I don't think that there's any sort of substantive reasonable challenge to whether this variance was too much based on the information before the Court. And when there is case law that talks about when a Court actively solicits information, engages in dialogue with the party or the defendant, that we can look and understand from the context what its rationale is. And in this situation, I think that the second sentencing hearing especially bears that out. It was very court-driven. It was individualized. The Court actively solicited the information, engaged the defendant, and crafted a sentence that was responsive to it. At the end of the sentencing hearing, the Court even says, do you want to go back to Fort Dix where you were before? And the defendant says, no, I'd like to go to Peterson. You're my family. And the Court says, okay, I'll make that recommendation. Well, it seems pretty clear that the District Court was really focused on the 3553A factors. And to his credit, he did, as you just described, he went into great detail trying to tease out information that was relevant and sometimes helpful to the defendant. But that's only half of the equation. And I hate to bring you back to the first half. If the judge hasn't done his job in the first half, that is establishing the guidelines range and dealing with the legal issues that are brought up, the objections to the PSR that the defendant brings up, you don't get half credit in sentencing. You have to do the whole thing. I agree, Your Honor. And I think that the guidelines issue in this case is certainly the thornier one. Because the Court should have made a clear ruling, and it didn't. And if the Court determines that it cannot, if this Court is not persuaded that the 2019 factual findings and the rulings are sufficient in the context of this case, then it does seem that the Court would have to remand. We're not arguing that, we're not making the type of harmlessness argument that says, had the District Court miscalculated the guideline range, we still would be at the same place. That's not the argument we're making here. The argument we're making is that the absence of the ruling in 2021 has to be understood in the context of the case and the fact that there were findings in 2019. What is your view of the standard of review? Plain error? Clear error? For the guidelines issue, we believe that they did raise an objection and alert the Court of its obligation to rule on the objection, and it failed to do so in 2021. So that would be a procedural error that's reviewed for abuse of discretion. Within that umbrella, factual findings are reviewed for clear error, legal issues are reviewed de novo. But I do want to clarify that there are certain factual disputes that the defendant has raised in these briefs that weren't presented to the District Court. So there are certain discrete factual challenges that I think are more appropriately reviewed under a plain error standard. For example, the opening brief was the first, or the appellate brief, I should say, was the first time that the defendant raised concerns about the fact that the informant had identified 30 grams per month, or 30 grams per week, but then over the course of four buys only bought a total of about 32 grams of drugs total. That wasn't something that was presented to the District Court as a basis to questioning the reliability of the confidential informant. What was presented in those objections in the District Court was basically the defendant denied conduct and said, this is what I did. And we had a statement that, we had the statement from Jaquarius outlining this other stuff. So there weren't discrete, really fact-based objections as to these individuals. It was just more the defendant saying, I didn't do that much. And that is different from some of these other cases that I've reviewed where, for example, there was concrete information supporting the defendant's denial. The name of the case escapes me, but there was one, it was a case involving a woman who was dealing an oxycodone and there was evidence from her medical records that she was taking the oxycodone. And it was inappropriate for the court to attribute the entire amount of her prescription to her because there was concrete evidence supporting her denial and that she was taking significant amounts of that drug. There was another case, Beverly Baker, where there were internally, there were cooperators who gave multiple inconsistent statements. Here, we basically have a statement by the defendant and the statement by Jaquarius. And at the end of the day, our position is that the court chose to go with what was in the PSR and what was offered by Jaquarius. Can I go back to your response to Judge Boyd's question that you're just answering about the standard review? There's an issue about whether complying with Federal Law Criminal Procedure 32I, you know, to rule on any factual issues out there. If a court hasn't done that, does that create a plain error review for not, if the parties don't say, court, you haven't resolved these factual issues? Does the government have a position on that? As a practical matter, it's, as a practical matter, the advocate should help the judge in ensuring that it meets its procedural obligations. But I do think that having raised those objections, that is sufficient to alert the court of its obligation to make a ruling. Now, if we want to get into kind of like the, so I think that the objection was preserved. And I think that the objection, as it was framed in this case, was believe me, don't believe Jaquarius. And the court chose to believe Jaquarius, chose to credit the PSR. And the adoption of the PSR in this case, at least as to the drug weight, that was a sufficient, the adoption of the PSR allows this court to conduct a meaningful appellate review. That PSR supports the base offense level of 32. But he didn't adopt the PSR. He adopted the PSR at the first sentencing hearing when he calculated the advisory guideline range. Did he adopt? Even in 2019, he... He adopted the PSR and he... I remember him saying that the plaintiff's evidence supports the guideline range. I remember him saying it supports the paragraph 62, 63, 65. But did he adopt the PSR? Well, what he later said, in the statement of reasons, he noted that he adopted the PSR. But then he also said on page 58, I believe the evidence produced here at this sentencing fully confirms and supports and requires the guidelines range of at least 210 to 262 months. So I understand that... Isn't that the qualifier of the evidence produced at this sentencing? Now you've got some additional evidence at the new sentencing. And I know you don't think that it's all that compelling, but it is new evidence. So doesn't the district court have an obligation to deal with that evidence? That evidence about the new witnesses, it wasn't sufficiently particular for the court to do anything with it. Is that what the court said? No, that's what the... The government responded to that effect. And then the hearing would continue to the following day because it was towards the end of the day. Let me ask you the practical question. I ask you, your colleague, without individualizing the thing, but the Eastern District of North Carolina is notorious for some of this, this kind of stuff happening. Why doesn't the United States Attorney's Office help the judge out? You know, judge, you need to consider this, rule on this. You might not have a legal obligation, but how about a practical obligation which would help us out? I can tell you that that is something that our AUSAs are encouraged to do, encouraged to step up and try to create as solid a record as possible. The reality is as things unfold in a courtroom is that sometimes that doesn't happen. And this is a case where, in my opinion, I think that on both sides, the counsel could have done a better job helping the district court out. I wanted to, if I may briefly address one thing that had been raised was the idea about whether the government should receive a second bite at the apple. If this case goes back for inadequacy of the factual findings or a lack of clarity regarding the guideline range, I would suggest that this is an appropriate case where the court could choose to take additional information and evidence. The Pettis case cited another case that said the government should not generally receive a second opportunity to present evidence absent a persuasive reason. I think here, some of these concerns that we've been exploring, faults on part of counsel is a persuasive reason. Some of these discrete factual challenges that are raised in the brief as to the particular individuals and drug weights, those weren't squarely presented to the district court. The court was not squarely asked to rule on how many drugs Wendy McGee was handling. And this would be an appropriate case where if it goes back to the district court, the district court should be allowed to develop a factual record to enable it to comply with this court's instructions to make the requisite factual findings. But ultimately, we're asking the court to affirm. If there are no further questions from the panel, thank you very much. So Judge Floyd, to answer your question, you had asked about the second bite at the apple, and my friend did mention it. It is United States v. Pettis, and it says, we emphasize, however, that this remand does not mean the government gets a second bite at the apple. Rather, the district court should make its determination about the presence or absence of this enhancement based on the record as it exists. Should that rule apply in this case? It should, Your Honors, because again, we filed very detailed objections to this PSR. The probation officer specifically said, in light of the extensiveness of these objections, the government needs to be prepared to present evidence in support of these calculations, and it presented one witness. It didn't introduce Jaquarius's debrief. One witness who did not testify in support of those calculations, and so we don't think it would be appropriate for the court, and particularly after, again, this went up on remand. The government is going back into the resentencing knowing exactly all of our arguments, and it still didn't really present compelling evidence in support of those. I'd like to talk about, oh, my friend mentioned that some of the arguments on appeal are not exactly what trial counsel made. Yes, but again, I would point this court to United States v. Boyd, which says that an appellate attorney is allowed to bring up separate arguments as long as they're generally in support of the same objections that were made below. So I was simply trying on appeal to show and emphasize how this evidentiary record is not very clear, and it actually does not support the amounts in the PSR. Ms. Leisman, can I ask you about the first point you made? Are you saying that on this record, the district court wouldn't be well within its rights to say, I hear the objections that have been raised. I've considered the statements made by the defendant and allocution with respect to drug quantity. I've considered the proffer by the defense with respect to the three witnesses, but in my estimation, the PSR and the government's evidence is more credible. I find that the drug quantity remains unchanged. You don't think that can happen? That would certainly be better than what we have, Your Honor. I mean, whereas, I mean... Well, you seem to be suggesting that the government's going to be out of luck because they didn't, they lost their opportunity to present evidence. No, absolutely not, Your Honor. I do think the court can absolutely go into this record, look at the evidence as presented, and make its drug quantity calculations. What happens if we send this case back for full re-sentencing? Judge Boyle cleans up the record, and he changes his mind, and he goes back to his original sentence. You're out of luck. I mean, I'm asking legally... I think we would be out of luck. You know, I mean, it would be interesting to see, I mean, that would, if he, if he changes his mind and goes back to 240, I think that might raise some possible issues of judicial vindictiveness, because you're giving a different sentence suddenly than the one you did before, and really the record has not changed. So, you know, I'm not sure about that. But yes, that's a chance that the defendant always takes when we appeal. My friend said that the court's findings at the first sentencing were sufficient. And I would just like to point out and make sure, because I didn't have the time to talk about it, but the court's findings on at least the management enhancement, even at the first sentencing, were not sufficient, because the court did not, of course, talk about the 3B1.1 factors, and in fact, appears to have applied an irrelevant factor for that management enhancement, right? Where you have a JA51, when the defense counsel is pushing back on the management enhancement, and the court says, well, don't you have considerable evidence of profits, and then directs the government to put the agent back on the stand, and then the agent testifies to some money that was found at the apartment in the hotel room. Your Honor, profits, standing alone, is not evidence of management. Profits is evidence of drug dealing. It's a ubiquitous factor that is shared by every commercial enterprise. Drug dealers are in the business to make money. I don't know of any non-profit drug dealer. No doubt, and I'm not trying to read too much into it, but I think another argument would be that when you combine the profits with the equipment, and with the number of people that at least, the extent is there, and I know you questioned the sufficiency of that, that those combined to show an operation involves more than him. I think the point is completely fair that profit money alone doesn't prove supervision. That wasn't the only thing that was in the record. Well, it's relevant only under 3B1.1 if the defendant is receiving a lion's share of the profit, right? Because if you are distributing money and you keep most of it yourself, and you give other people lesser amounts, that's a pretty good indication of hierarchy, but that's not what we have here, and I think the court was simply looking at profits alone, and we contend that that is not an appropriate 3B1.1 factor. I would emphasize that our objections were not simply preservation objections, as the government says. These were very legitimate, fulsome objections that we never got a ruling on, and at the end of the day, Your Honors, I think we are ultimately just left with guesswork, and this court has said that guesswork is not sufficient for appellate review, and so we are asking, to be clear, we are asking that you vacate the management enhancement in its entirety and instruct the district court not to reapply that, but if you disagree and find that there is evidence in the record that would support a management enhancement, it does at least need to go back for the court to make its reasoning plain on the record. If there are no further questions, Your Honors, we would ask you to vacate the sentence and remand this case for resentencing. Thank you very much, Ms. Leisman. Thank you, Your Honor. I want to thank both counsel for their able arguments this morning. Both the United States and Mr. King were very well represented. We will come down and greet counsel and adjourn for the day. Tough duty, I know.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., Henry F. Floyd